723 S.E.2d 809

## SOUTH CAROLINA LAW ENFORCEMENT DIVISION, Appellant,

v.

## 1–SPEEDMASTER S/N 00218, Respondent.

### No. 4834.

Court of Appeals of South Carolina.

Heard Sept. 15, 2010.
Decided May 25, 2011.
Withdrawn, Substituted, and Refiled Sept. 27, 2011.

Attorney General Alan Wilson, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General T. Stephen Lynch, Assistant Attorney General Mary Francis

Jowers, and Assistant Attorney General Geoffrey K. Chambers, all of Columbia, for Appellant.

Wade S. Weatherford, of Gaffney, for Respondent.

KONDUROS, J.

The South Carolina Law Enforcement Division (SLED) appeals the circuit court's affirmance of the magistrate's order finding a Speedmaster machine confiscated from a convenience store was not an illegal gaming device pursuant to section 12–21–2710 of the South Carolina Code (2000). We affirm.

## FACTS

The Speedmaster machine that is the subject of this action was seized by SLED agents from the Cherokee Food Mart on February 13, 2007, for being an illegal gaming device. SLED took the Speedmaster to Cherokee County's chief magistrate, who issued an Order of Destruction/Notice of Post–Seizure Hearing. The magistrate conducted a post-seizure hearing and concluded the Speedmaster was not an illegal gaming device as contemplated by section 12–21–2710 of the South Carolina Code. He held SLED failed to produce evidence the Speedmaster was used in gambling endeavors or that the game constituted a game of skill as opposed to a game of chance. SLED filed a motion to alter or amend the judgment, which was denied. The circuit court affirmed the magistrate's order, determining the order was legally and factually correct. This appeal followed.

## STANDARD OF REVIEW

■ "When there is any evidence, however slight, tending to prove the issues involved, [the appellate court] may not question a magistrate court's findings of fact that were approved by a circuit court on appeal." *Allendale Cnty. Sheriff's Office v. Two Chess Challenge II*, 361 S.C. 581, 585, 606 S.E.2d 471, 473 (2004).

## LAW/ANALYSIS

### I. Free Play Feature

■ In its first issue on appeal, SLED urges us to adopt an interpretation of section 12–21–2710 of the South Carolina

Code (2000) that would make any machine with a free play feature illegal. This issue is not preserved for our review. SLED raised this issue at the hearing before the magistrate, but the magistrate failed to address this argument in its final order. SLED raised the issue again in its motion to alter or amend the judgment, which was summarily denied. The filing of the motion to alter or amend with the magistrate preserved the issue for review by the circuit court. *See Pye v. Estate of Fox*, 369 S.C. 555, 565–66, 633 S.E.2d 505, 510–11 (2006) (holding an issue is preserved for appellate review, even if it is not ruled upon, provided it was raised at trial and raised to the court in a post-trial motion). However, the circuit court's order does not specifically address the free play feature argument. It confirms the magistrate's final order, finding the order was "legally and factually correct." However, as previously stated, the magistrate's order failed to address the free play feature argument. No motion to alter or amend the circuit court's order is contained in the record on appeal, and therefore we have no ruling from the circuit court as to this issue. Consequently, the issue is not properly preserved for our review. *See Hill v. S.C. Dep't of Health & Envtl. Control*, 389 S.C. 1, 22 n. 11, 698 S.E.2d 612, 623 n. 11 (2010) ("[T]he circuit court has the authority to hear motions to alter or amend when it sits in an appellate capacity and such motions are required to preserve issues for appeal where the circuit court fails to rule on an issue."); *see also City of Rock Hill v. Suchenski*, 374 S.C. 12, 16, 646 S.E.2d 879, 880 (2007) (interpreting *United Dominion Realty Trust, Inc. v. Wal–Mart Stores, Inc.*, 307 S.C. 102, 107, 413 S.E.2d 866, 869 (Ct.App. 1992)) (the "circuit court sitting on appeal did not address an issue and Wal–Mart made no motion pursuant to Rule 59(e), SCRCP[,] to have the court rule on the issue; thus, the allegation was not preserved for further review by the Court of Appeals.").

## II. Game of Skill or Game of Chance

■ SLED also contends the magistrate erred in finding the game on the Speedmaster constituted a game of skill as opposed to a game of chance. We disagree.

SLED advocates adoption of the "dominant factor test," which is discussed at some length in *Johnson v. Collins Entertainment Co.,* 333 S.C. 96, 508 S.E.2d 575 (1998). There, the court was asked to determine whether video poker machines, legal at the time, constituted lotteries as prohibited by the South Carolina Constitution. *Id.* at 98, 508 S.E.2d at 577. The dissent opined South Carolina should apply the dominant factor test in determining whether something was a lottery involving chance. *Id.* at 113, 508 S.E.2d at 584 (Burnett, J. dissenting). The dominant factor test provides when "the dominant factor in a participant's success or failure in a particular scheme is beyond his control, the scheme is a lottery, even though the participant exercises some degree of skill or judgment." *Id.* "If a participant's skill does not govern the result of the game, the scheme contains the requisite chance necessary to constitute a lottery." *Id.*

In contrast, under the "pure chance doctrine," founded in British law, "any skill, however minimal, is sufficient to remove a scheme from the definition of lottery." *Id.* Neither test has been judicially adopted in South Carolina.[1] However, based on our standard of review, we need not adopt a test. In this case, under either standard, at least slight evidence tended to prove the game at issue was one of skill. *See Allendale Cnty. Sheriff's Office v. Two Chess Challenge II,* 361 S.C. 581, 585, 606 S.E.2d 471, 473 (2004) (holding this court will not disturb the magistrate's findings of fact affirmed by the circuit court if any evidence supports them).

Jay Blair was a technician who worked on the Speedmaster. According to the record, at the hearing before the magistrate, he played several games and won them all. Then, the magistrate requested he play more. Blair won fifteen out of sixteen games with the one loss being due to player error. Even a player adept at playing a game will not always win if an element of the game is beyond his or her control. Such is the case with card games in which a good player cannot win *every* hand simply because the cards they are given are determined by chance. Here, the evidence showed a good player could

---

1. We are aware of a case currently under consideration by the South Carolina Supreme Court, *Town of Mt. Pleasant v. Chimento* (heard October 19, 2010), which may address this issue.

win every game. Therefore, based on our standard of review, we affirm the circuit court's affirmance of the magistrate's determination that the only game on the Speedmaster was a game of skill.

### III.  Used for Gambling/Evidence of Gambling

■  In its next argument, SLED maintains the magistrate erred in finding the statute contained a requirement that a machine must be used for gambling to be illegal.  SLED further contends if the statute contained such a requirement, the magistrate erred in finding it presented no evidence of gambling.  We agree in part and disagree in part.

In *Ward v. West Oil Co.*, the supreme court cited with approval the following definition: "[A]n apparatus is a gambling device where there is anything of value to be won or lost as the result of *chance*, no matter how small the intrinsic value."  387 S.C. 268, 278, 692 S.E.2d 516, 522 (2010) (quoting C.J.S. *Gaming* § 10 (Supp.2010)) (emphasis added).  The *Ward* opinion also provided: "The three elements of gambling—consideration, *chance* and reward—are thus clearly present in a device which, for a price, and based upon *chance*, offers a monetary or merchandise reward to the successful player."  *Id.* (quoting *State v. 158 Gaming Devices*, 304 Md. 404, 499 A.2d 940, 951 (1985)) (emphasis added).

Additionally, gambling and gaming are defined in the treatise South Carolina Jurisprudence.  "As legal terms, 'gaming' and 'gambling' are the same and involve either fraud, or cheating or *chance* applied in a situation of agreement between two or more persons in which, in accordance with certain rules, the parties play a game or contest, or await the outcome of some event that will determine one or more winners or losers."  7 S.C. Jur. *Gaming* § 3 (1991) (citing Am.Jur.2d *Gaming* § 10 (1967)) (emphasis added).  Gambling is also defined in section 3–11–100(2) of the South Carolina Code (Supp.2010) governing gambling cruises.  " 'Gambling' or gambling device' means *any game of chance* and includes, but is not limited to, slot machines, punchboards, video poker or blackjack machines, ke[ ]no, roulette, craps, or any other gaming table type gambling or poker, blackjack, or any other card gambling game."  *Id.* (emphasis added).

SLED is correct that section 12–21–2710 does not specifically require that an illegal gaming device be used for gambling. However, we have affirmed the magistrate's ruling that the Speedmaster was not a game of chance. According the authorities previously cited, the term gambling necessarily encompasses the element of chance. Therefore, we conclude the circuit court properly affirmed the magistrate's ruling the Speedmaster was not "used for gambling."

### IV.  Lost Post–Seizure Hearing Tapes

■ Finally, SLED contends if the arguments set forth above are not persuasive, it is entitled to a new post-seizure hearing because the tapes of the original proceeding were lost. We disagree.

SLED's argument on this point is not preserved for our review. SLED began its argument before the circuit court by seeking a new trial based on the lost tapes. The circuit court then inquired of SLED if the record of the post-seizure hearing might be reconstructed. SLED did show some apprehension at this point, but moved forward by going through a list of evidentiary items it considered important that were not reflected in the magistrate's order or return. Speedmaster and SLED were in agreement with respect to most items with the exception of what denominations of currency the machine would accept. SLED stated, "I mean, in terms of the currency, we think that—I mean, I don't want to stop the whole thing just for that. So I can go—I'll be glad to go forward on the merits." Because SLED proceeded with its case and did not reserve any objection regarding which currency the Speedmaster would accept, the issue of lost post-seizure hearings should not be considered by this court. *See In re Estate of Boynton,* 355 S.C. 299, 305, 584 S.E.2d 154, 157 (Ct.App. 2003) (citing 4 C.J.S. *Appeal & Error* § 185 (1993)) ("A party who voluntarily acquiesces in or takes a position inconsistent with the right to appeal impliedly waives or is estopped to assert his right to appellate review.").

Based on all of the foregoing, the circuit court's affirmance of the magistrate's ruling is

**AFFIRMED.**

WILLIAMS and PIEPER, JJ., concur.